1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   LYNELL AVERY DENHAM,                          CASE NO. C12-0814JLR

11                           Petitioner,           ORDER DENYING 28 U.S.C.
                                                   § 2255 MOTION
12                    v.

13   UNITED STATES OF AMERICA,

14                           Respondent.

15          Before the court are Petitioner Lynell Avery Denham's 28 U.S.C. § 2255 motion

16   to vacate, set aside, or correct his sentence (Mot. (Dkt. ## 21, 36)), and his motion for

17   partial summary judgment regarding the same (SJ Mot. (Dkt. # 31)).  Mr. Denham pled

18   guilty to bank burglary charges in 2009, but now he claims his conviction was

19   unconstitutional because his appellate counsel was ineffective.  As part of his plea deal,

20   Mr. Denham preserved his right to appeal pretrial rulings, but on appeal the Ninth Circuit

21   affirmed the two pretrial rulings he appealed.  Now, Mr. Denham argues that his

22   appellate counsel should have raised a third issue on appeal and that failing to do so was

ORDER- 1

1  ineffective.  The court rejects this argument, finding that the third issue was not a strong

2  candidate for appeal and the decision not to raise it was a valid appellate strategy.

3  Accordingly, and for the reasons explained below, the court DENIES Mr. Denham's 28

4  U.S.C. § 2255 motion (Dkt. ## 21, 36) and strikes his motion for partial summary

5  judgment as moot (Dkt. # 31).

6  **I.   BACKGROUND**

7        Mr. Denham asks the court to vacate the convictions to which he previously pled

8  guilty:  four counts of bank burglary and one count of felon in possession of a firearm.

9  *See USA v. Denham*, No. 08-cr-00248-RSL (Dkt. ## 72, 74).  Mr. Denham was accused

10  of committing multiple sophisticated bank burglaries in the Puget Sound area by climbing

11  into banks through the wall of an adjacent building or the roof, cutting wires to disable

12  the security system, disabling surveillance equipment, and using a power drill to open the

13  safe.  (Resp. (Dkt. # 35).)  These activities led to a 2007-08 investigation by the FBI's

14  Puget Sound Violent Crimes Task Force that in turn led the Task Force to believe Mr.

15  Denham (a multiple-convicted felon) had committed the burglaries.  *Denham*, No. 08-cr-

16  00248-RSL (Dkt. # 57) at 2.

17        In March 2008, the Task Force concluded that there was probable cause to arrest

18  Mr. Denham and search his home for evidence of the crimes.  *Id.* (Dkt. # 58-2) at 1-2.

19  They obtained a search warrant and searched his residence.  *Id.*  In the search, they found

20  evidence that Mr. Denham had committed the bank burglaries—including clothing

21  similar to that seen in surveillance photographs, tools suitable for committing burglaries,

22  templates used to drill holes in safes in order to crack them, and a firearm—and arrested

1  Mr. Denham on the spot.  *Id.*  Mr. Denham confessed while he was detained, and the

2  United States brought charges against him.  *Id.* at 2.

3      The charges were eventually resolved by a plea agreement, *id.* (Dkt. ## 72, 74),

4  but only after Mr. Denham lost a suppression hearing in district court.  *Id.* (Dkt. # 69).

5  The hearing addressed three motions to suppress challenging (1) whether the search

6  warrant was validly obtained and executed in light of *Franks v. Delaware*, 438 U.S. 154

7  (1978); (2) whether Mr. Denham's confessions should have been suppressed under

8  *Miranda v. Arizona*, 384 U.S. 436 (1966), or related doctrines; and (3) whether there was

9  probable cause to arrest Mr. Denham.  *Id.* (Dkt. ## 53-55).  The district court held an

10  evidentiary hearing on these motions and denied them all.  *Id.* (Dkt. # 69).  Shortly

11  thereafter, Mr. Denham entered into a plea agreement with the Government under which

12  he pled guilty, had several charges against him dismissed, and preserved his right to

13  appeal the district court's pretrial rulings.  *Id.* (Dkt. ## 72, 74) at 8, 10.

14      On appeal, Mr. Denham raised two out of the three suppression issues decided by

15  the district court (*see* Denham Br. to Ct. of App. (Dkt. # 35-2 Ex. 11) at 39-40), and the

16  Ninth Circuit affirmed on both.[1]  *United States v. Denham*, 448 F. Appx. 757 (9th Cir.

17  2011).  He raised the *Franks* issue and the *Miranda* issue but not the probable cause to

18  arrest issue.  (*See* Denham Br. to Ct. of App. at 39-40.)  The Ninth Circuit decided in the

19  Government's favor on both the *Franks* issue and the *Miranda* issue.  *Denham*, 448 F.

20  Appx. at 757.  Not long after, Mr. Denham filed this motion arguing that his conviction

21  _____

22      [1] Mr. Denham also raised an issue regarding the length of his sentence that was unrelated
to the suppression motions.  (*See* Denham Br. to Ct. of App. at 40.)

ORDER- 3

1  violated the constitution because his attorney did not raise the probable cause to arrest

2  issue on appeal, and that the court should grant relief under 28 U.S.C. § 2255.

3  **II.   ANALYSIS**

4       In order to state a cognizable 28 U.S.C. § 2255 claim, a petitioner must assert that

5  he is in custody in violation of the Constitution or laws of the United States, that the

6  district court lacked jurisdiction, that the sentence exceeded the maximum allowed by

7  law, or that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).

8       Mr. Denham argues that he is in custody in violation of the United States

9  Constitution.  In addition to his ineffective assistance of appellate counsel claim, he

10  argues that government misconduct during his prosecution renders his custody

11  unconstitutional.  As discussed below, the court rejects Mr. Denham's ineffective

12  assistance claim on its merits and holds that he procedurally defaulted on his government

13  misconduct claim.

14  **A.   Ineffective Assistance of Appellate Counsel**

15       The Sixth Amendment to the United States Constitution guarantees a criminal

16  defendant the right to effective assistance of counsel, *Strickland v. Washington*, 466 U.S.

17  668, 687 (1984), including the right to effective assistance of appellate counsel.  *Evitts v.*

18  *Lucey*, 469 U.S. 387, 397 (1985).  However, on appeal, "appellate counsel has no

19  constitutional obligation to raise every nonfrivolous issue requested by the defendant."

20  *Miller v. Keeney*, 882 F.2d 1428, 1434, n.10 (9th Cir. 1989) (citing *Jones v. Barnes*, 463

21  U.S. 745, 751-54 (1983)).  Instead, ineffective assistance only arises if the defendant can

22  prove that (1) counsel's performance fell below an objective standard of reasonableness

1   and (2) a reasonable probability exists that, but for counsel's error, the result of the

2   proceedings would have been different.  *Strickland*, 466 U.S. at 687-94.

3          Judicial scrutiny must be highly deferential for the first prong of this test.  *Id*. at

4   689.  There is a strong presumption that counsel's performance fell within the wide range

5   of reasonably effective assistance.  *Id*.  The Ninth Circuit has made clear that "'[a] fair

6   assessment of attorney performance requires that every effort be made to eliminate the

7   distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

8   conduct, and to evaluate the conduct from counsel's perspective at the time.'"  *Campbell*

9   *v. Wood*, 18 F.3d 662, 673 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689).

10         In the context of ineffective assistance of appellate counsel, this means granting

11  substantial deference to appellate counsel's decisions regarding which issues to pursue on

12  appeal.  "For judges to second-guess reasonable professional judgments and impose on

13  appointed counsel a duty to raise every 'colorable' claim suggested by a client would

14  disserve the very goal of vigorous and effective advocacy . . . . Nothing in the

15  Constitution or our interpretation of that document requires such a standard."  *Jones*, 463

16  U.S. at 754.  Indeed, appellate counsel's failure to raise a "weak" issue on appeal will

17  "frequently remain above an objective standard of competence . . . and have caused [the]

18  client no prejudice . . . ."  *Miller*, 882 F.2d at 1434 ("[T]he weeding out of weaker issues

19  is widely recognized as one of the hallmarks of effective appellate advocacy . . . . [A]

20  lawyer who throws in every arguable point—'just in case'—is likely to serve [his] client

21

22

less effectively than one who concentrates solely on the strong arguments.")[2]  The salient

question in analyzing a claim for ineffective assistance of appellate counsel is whether

the unraised issue, if raised, would have "led to a reasonable probability of reversal."  *Id.*

at 1434-35.

In Mr. Denham's case, the issue appellate counsel chose not to raise would not

have led to a reasonable probability of reversal.  The court has examined the unraised

issue and concludes that counsel's failure to raise it did not fall below an objective

standard of reasonableness because it was a weak issue for appeal and counsel made a

legitimate strategic choice by deciding to focus on stronger issues.  *See Strickland*, 466

U.S. at 687-94.

First and foremost, this is because all the evidence in the case suggests that there

was probable cause to arrest Mr. Denham.  Probable cause is required for a warrantless

arrest, *Michigan v. Summers*, 452 U.S. 692, 700 (1981), and it exists when officers have

knowledge or reasonably trustworthy information sufficient to lead a person of

reasonable caution to believe that an offense has been or is being committed by the

person being arrested.  *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  In the Ninth Circuit,

probable cause to arrest exists when "under the totality of the circumstances known to the

arresting officers, a prudent person would have concluded that there was a fair probability

---

[2] "Like other mortals, appellate judges have a finite supply of time and trust; every weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court."  *Miller*, 882 F.2d at 1434.

ORDER- 6

1    that [the defendant] had committed a crime." *United States v. Lopez*, 482 F.3d 1067,

2    1072-73 (9th Cir. 2007).

3           This standard is met here.  When police arrested Mr. Denham, they had a lot of

4    evidence that he had committed the burglaries.  Indeed, the police obtained a search

5    warrant for Mr. Denham's residence because they believed he had committed the crimes.

6    (*See* Search Warrant Affidavit (Dkt. # 35-1) Ex. 1.)  The police outlined their case against

7    Mr. Denham in the search warrant affidavit.  (*Id.*)  First, they found a similar modus

8    operandi between the burglaries under investigation, three similar burglaries Mr. Denham

9    had been convicted of committing, and another recent burglary for which Mr. Denham

10   had been arrested.  (*Id.* at 2.)  Second, they had bank surveillance camera footage and

11   photographs from the burglaries for a person matching Mr. Denham's physical

12   description and wearing clothes Mr. Denham had been observed wearing, including a

13   yellow hooded pullover sweatshirt and a traffic safety vest that said "Glacier" on the

14   back.  (*Id.* at 3, 4.)  Third, they had evidence that Mr. Denham sold a power drill at a

15   pawn shop shortly after one of the crimes and that he had done the same thing after

16   previous burglaries.  (*Id.* at 3.)  Fourth, the officers found a car registered at the address

17   of Mr. Denham's residence in a parking lot near the crime scene and learned that the car

18   had been there for over three hours at 3:45 in the morning.  (*Id.*)  Fifth, they had evidence

19   that Mr. Denham purchased a Mercedes-Benz for approximately $9,000.00 in cash the

20   day after one of the burglaries (in which $64,000 in cash was stolen) despite the fact that

21   he has no steady employment and no verifiable sources of income.  (*Id.* at 4.)

22   //

1    After they executed the search warrant, the police had even more evidence that

2    Mr. Denham had committed the burglaries.  *See Denham*, No. 08-cr-00248-RSL (Dkt.

3    # 58-2) at 1-2.  In the search, they found several articles tying Mr. Denham to the crimes:

4    they found clothing similar to that seen in bank surveillance photographs during the

5    burglaries, tools suitable for committing burglaries, templates used to drill holes in safes

6    in order to crack them, and a firearm.  *Id.*

7    All of this evidence demonstrates that probable cause to arrest was a weak issue

8    for appeal.  The Ninth Circuit would have examined all of this evidence and likely would

9    have concluded that the police had probable cause to arrest Mr. Denham—that is, that

10   they had knowledge or reasonably trustworthy information sufficient to lead a person of

11   reasonable caution to believe that Mr. Denham had committed bank the bank burglaries

12   under investigation, *see Beck*, 379 U.S. at 91, and that under the totality of the

13   circumstances known to the arresting officers, a prudent person would have concluded

14   based on the evidence that there was a fair probability that Mr. Denham had committed

15   the burglaries.  *See Lopez*, 482 F.3d at 1072-73.

16   The court is further convinced that this was a weak issue for appeal by the district

17   court's unequivocal finding of probable cause to arrest.  Following an evidentiary

18   hearing, the district court concluded that the evidence the officers had "certainly" led

19   them to believe Mr. Denham committed the burglaries:

20       [E]ven excising [certain allegedly false statements], there was probable
         cause to believe at that point, based on the modus operandi of Mr. Denham,
21       prior convictions in similar circumstances, the sheer number of cases, and
         the evidence that they did have, which, even if you say it's not firm that it's
22       the same shirt, it's not firm that it's the same footprint, all those factors

ORDER- 8

1    certainly led a reasonable police officer and a reasonable reviewing judge to
2    assume that there was probable cause that one individual committed these
     multiple acts and that individual was Mr. Denham.

3    (Tr. of Ev. Hearing (Dkt. # 35-1) at 44.)  This finding demonstrates that the evidence

4    before the district court weighed heavily in favor of finding probable cause.  (*See id.*)

5    The Ninth Circuit would have examined the same record as the district court and likely

6    would have reached the same conclusion.  In fact, on appeal, the Ninth Circuit examined

7    the probable cause issue in the context of a search warrant and summarily rejected Mr.

8    Denham's assertion that there was no probable cause.  *Denham*, 448 F. Appx. at 757.  All

9    of this leads the court to believe that raising the issue would not have led to a reasonable

10   probability of reversal.

11       Finally, the choice not to pursue the probable cause to arrest issue was made by

12   appellate counsel with a substantial amount of appellate and criminal experience.  (*See*

13   Curriculum Vitae of Brooks Holland (Dkt. # 35-2).)  Mr. Denham's appointed counsel,

14   Brooks Holland, has practiced criminal law for almost twenty years, including more than

15   five years representing criminal defendants in front of the Ninth Circuit Court of Appeals.

16   (*Id.* at 6.)  He is a tenured professor at Gonzaga University School of Law, where he has

17   taught criminal law and criminal procedure and has published numerous articles in

18   scholarly legal journals around the country.  (*Id.* at 2-5.)  This accomplished attorney's

19   decision not to pursue the probable cause to arrest issue provides circumstantial evidence

20   that the issue lacked merit and that the outcome on appeal likely would not have been

21   different had the issue been raised.

22   //

1    The court concludes that Mr. Denham's appellate counsel was not deficient, and

2    therefore not ineffective,[3] when he decided not to raise the probable cause to arrest issue.

3    Accordingly, the court DENIES Mr. Denham's 28 U.S.C. § 2255 motion on these

4    grounds.

5    **B.    Government Misconduct**

6    Mr. Denham also argues that his conviction should be vacated because of

7    governmental misconduct—namely, that the United States never should have brought

8    charges against him knowing that there was no probable cause to arrest him in the first

9    place.

10   The court rejects Mr. Denham's attempt to argue this theory because Mr. Denham

11   procedurally defaulted on it.  Procedural default occurs when a habeas petitioner fails to

12   raise a claim on direct appeal.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003);

13   *United States v. Braswell*, 501 F.3d 1147, 1149-50 (9th Cir. 2007); *United States v.*

14   *Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).  The general rule is that procedural default

15   bars presentation in a federal habeas action of a claim not raised on direct appeal.[4]  *Id.*

16   Mr. Denham did not raise his government misconduct claim on direct appeal.  (*See*

17   Denham Br. to Ct. of App.)  As such, the claim is subject to procedural default and Mr.

18   Denham cannot raise it now.  *Massaro*, 538 U.S. at 504.

19

20   [3] The reviewing court need not address both components of the *Strickland* inquiry if an insufficient showing is made on one component.  *Strickland*, 466 U.S. at 697.

21   [4] There are notable exceptions to the procedural default doctrine, such as ineffective assistance of counsel, challenges to subject matter jurisdiction, and claims that could not be brought on direct appeal without additional factual development.  None of them apply to this government misconduct claim.

22

1      There are several reasons a court can excuse procedural default, but none of them

2  apply here.  They are:  (1) cause and prejudice, *United States v. Frady*, 456 U.S. 152,

3  167-68 (1982); (2) fundamental miscarriage of justice resulting in the conviction of one

4  actually innocent, *Murray v. Carrier*, 477 U.S. 478, 495 (1986); and (3) waiver of the

5  default by the government, *Franklin v. Johnson*, 290 F.3d 1223, 1229-30 (9th Cir. 2002).

6  Mr. Denham makes no attempt to argue that any of these exceptions apply, and indeed

7  none of them are relevant to this case:  there is no allegation, argument, or evidence

8  suggesting cause and prejudice, there are no facts suggesting actual innocence or a

9  fundamental miscarriage of justice, and there are no facts suggesting the United States

10  waived the procedural default.  Hence, no exceptions apply, and Mr. Denham has

11  procedurally defaulted because he did not raise his government misconduct claim on

12  direct appeal.

13                    **III.    CONCLUSION**

14      Having rejected all of Mr. Denham's claims, arguments, and theories, the court

15  DENIES his 28 U.S.C. § 2255 motion (Dkt. # 36) and STRIKES his motion for partial

16  summary judgment as moot (Dkt. # 31).

17      Dated this 16th day of April, 2013.

18

19

20                                     _____

21                                     JAMES L. ROBART
                                      United States District Judge

22